UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

BELINDA SMITH, on behalf of herself and
all others similarly situated,

                        Plaintiff,                  **REPORT AND RECOMMENDATION**

           v.                                        20-cv-04237 (FB) (ST)

JOVIA FINANCIAL CREDIT UNION,

                        Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Belinda Smith, on behalf of herself and all others similarly situated ("Plaintiff"), commenced this action against Jovia Financial Credit Union ("Defendant") on September 10, 2020. Plaintiff brings causes of action for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of New York General Business Law ("GBL") § 349. Defendant filed a Motion to Dismiss the Complaint. The Motion was referred to the undersigned to issue a Report and Recommendation. For the reasons set forth below, this Court respectfully recommends that Defendant's Motion be GRANTED IN PART and DENIED IN PART.

    **I.**    **BACKGROUND**

        **a.**  **Factual Background**

      The relevant facts are as follows. Plaintiff is a citizen and resident of Freeport, New York. Compl. ¶ 5. Defendant is engaged in the business of providing retail credit union services to customers, and is headquartered in Westbury, New York. *Id.* ¶ 6. Plaintiff holds a checking account with Defendant. *Id.* ¶ 5.

Where a customer's account lacks the funds to cover an item, "such as a check, withdrawal, or service charge," Defendant charges that customer a $30 insufficient funds fee ("NSF Fee") or an overdraft fee ("OD Fee"). *Id.* ¶ 2.  In relevant part, Defendant's Consumer Fee Schedule recites, "Item Returned Unpaid or Check Paid via Courtesy Payment (per item)[:] $30.00." *Id.* ¶ 20; Compl., Ex. A ("Fee Schedule"), Dkt. No. 1-1.  Further, Defendant's Membership Agreement indicates, "If a check, item or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)." Compl. ¶ 22; Compl., Ex. B ("Membership Agreement") at 12, Dkt. No. 1-2.  Defendant does not disclose a circumstance in which it may assess multiple fees for a single payment that was returned for insufficient funds and later reprocessed.  *See* Compl. ¶ 23.

On May 29, 2019, Plaintiff attempted to make an ACH payment.  *Id.* ¶ 14.[1]  Because Plaintiff's account lacked sufficient funds, Defendant rejected payment of the item and charged Plaintiff a $30 NSF Fee.  *Id.* ¶ 15.  On May 31, 2019, Defendant processed the same payment again, returned the item unpaid, and charged Plaintiff a second $30 NSF Fee.  *Id.* ¶ 16.  On September 23, 2019, Defendant rejected payment of an ACH item because Plaintiff's account lacked sufficient funds.  *Id.* ¶ 18.  On September 25, 2019, Defendant reprocessed the payment from September 23, 2019, paid the item, and charged Plaintiff a $30 OD Fee.  *Id.*

---

[1] Defendant explains Automated Clearing House ("ACH") transactions, referring the Court to *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426-27 (6th Cir. 2018), and the National Automated Clearing House Association ("NACHA") Rules.  *See* Mot. at 4-5.  Briefly, "ACH transactions are electronic payments made from one bank account to another and involve one party providing their account number and routing number." *Lossia*, 895 F.3d at 426.  The parties agree that the NACHA Rules are incorporated into the Membership Agreement.  *See* Mot. at 4; Opp. at 12; *see also* Membership Agreement at 17-18.

### b. Procedural Posture

Plaintiff commenced this action against Defendant on September 10, 2020, alleging four causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; and (4) deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York, in violation of GBL § 349. *See id.* Plaintiff brings this case as a class action and alleges jurisdiction pursuant to the Class Action Fairness Act of 2005. *See id.* ¶ 7. On December 21, 2020, Defendant filed its Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. Dismiss, Dkt. No. 18; Mem. Supp. Mot. Dismiss ("Mem Supp."), Dkt. No. 18-1. The Motion has been fully briefed. *See generally* Resp. Opp. Mot. Dismiss ("Opp."), Dkt. No. 18-2; Reply Supp. Mot. Dismiss ("Reply"), Dkt. No. 18-5.

## II. LEGAL STANDARDS

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint successfully states a claim when there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

There are "[t]wo working principles" that guide this analysis: "First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party," and "[s]econd, only a complaint that states a plausible claim for relief survives a

motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted), *adopted by* 2017 WL 2303507 (E.D.N.Y. May 24, 2017). Although this Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

### III. DISCUSSION

#### a. Breach of Contract

Plaintiff alleges that Defendant breached its contract with Plaintiff through its "fee policies and practices," that is, by "charg[ing] more than one NSF Fee on the same item." Compl. ¶¶ 54-55. According to Defendant, "plaintiff's interpretation of 'per item' as a promise" to charge a single NSF Fee is not supported by the contract. Mot. at 7, 9 ("the Membership Agreement does not say that an NSF [F]ee may be charged only the first time a merchant initiates a transaction for a check or other payment order"). Thus, Defendant suggests, it did not breach by charging multiple fees on transactions. *See id.* at 6-9.

A plaintiff alleging breach of contract must show: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citing *Eternity Glob. Master Fund*, 375 F.3d at 178). Whether a contract is ambiguous is "a question of law to be resolved by

4

the courts." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77N.Y.2d 157, 162 (1990)).

In arguing for dismissal, Defendant emphasizes the portion of the Membership Agreement that permits Defendant to charge a NSF Fee or OD Fee if an "'item . . . is **presented**'" and the account lacks sufficient funds for the transaction. Mot. at 7 (quoting Membership Agreement at 12) (emphasis in Mot.). Therefore, Defendant contends, it may seek fees "each time" an item is presented. *See id.*; Reply at 2 ("it is abundantly clearly [*sic*] that an NSF [F]ee is assessed each time an item is presented to [Defendant] even if the item presented has supposedly been presented before"). Defendant proceeds to discount Plaintiff's reliance on the "per item" language in the Fee Schedule, contending "Plaintiff's proposed interpretation . . . would require that key provisions of the Membership Agreement be completely ignored." Reply at 2. As to the proper understanding of "item," as the term is used in the Membership Agreement and Fee Schedule (collectively, "Account Documents"), Defendant contends that "each transaction would be a separate 'item' even if it related to Plaintiff's attempt to pay a single invoice." Mot. at 8.[2]

As suggested, Plaintiff focuses on Defendant's Fee schedule, which specifies that fees are assessed "per item." *See* Opp. at 6 (quoting Fee Schedule). Plaintiff contends that "an 'item' remains the same 'item' when it is reprocessed one or more times after being rejected for insufficient funds," and advocates for an understanding of "item" as "an *accountholder's* instruction for payment." *Id.* at 6 (emphasis in Opp.). Plaintiff argues that her proposed definition is supported by the parties' agreement, as well as by industry usage, the Uniform Commercial Code ("UCC"), and the NACHA Rules. *Id.* at 6-14.

---

[2] Defendant also refers to a portion of the Membership Agreement that states, "[y]ou agree that we may charge fees for overdrafts." *See* Mot. at 8 (citing Membership Agreement at 7). Read in context, the quotation comports with the general policy that Defendant may charge OD Fees but does not suggest that Defendant can charge additional fees on a transaction that has been re-submitted.

As to Defendant's argument that giving credit to the Fee Schedule would require "completely ignor[ing]" provisions of the Membership Agreement, *see* Reply at 2, the Court disagrees. For example, one could reasonably read the Account Documents to together suggest that Defendant may impose a fee when an item is presented, but only once per item. By such a reading, the provisions of the Account Documents are not incommensurable. However, this reading does not resolve the parties' disagreement over the meaning of "item."

Under similar circumstances, courts in the Second Circuit have found ambiguity in the contracts at issue and denied dismissal.[3] For example, in *McNeil v. Capital One Bank, N.A.*, the defendant bank argued that the governing agreement allowed it "to charge a fee for each item returned in accordance with its fee schedule, and each request for payment constitutes a discrete 'item' subject to such fees—even where a request is simply being re-processed"; alternatively, the plaintiff contended that "an 'item' cannot become a new 'item' when Capital One returns and reprocesses it one or more times." *McNeil v. Capital One Bank, N.A.*, No. 19-cv-00473-FB-RER, 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29, 2020) (internal quotation marks, emphases, brackets omitted). The *McNeil* Court ultimately found that "[b]oth parties have offered reasonable interpretations" of the agreement, and the claim for breach could not be dismissed on the pleadings because it was predicated on an ambiguous term. *Id.* (citation omitted).

Defendant attempts to distinguish *McNeil* from the instant matter. *See* Reply at 5-6. Defendant asserts that "[a]t issue in *McNeil* was the interpretation of the phrase 'each item,' which does not appear in [Defendant's] Membership Agreement." Reply at 6. It is not clear to

---

[3] In support of her argument, Plaintiff cites a number of cases from within the Second Circuit and beyond. *See* Opp. at 3-4 n.2; Pl.'s Notice Suppl. Authority, Dkt. No. 18-3; Pl.'s Second Notice Suppl. Authority, Dkt. No. 18-4. The Court believes that the cases to which it cites in this section of the Report and Recommendation provide ample guidance in its assessment of Defendant's Motion to Dismiss the breach of contract claim.

the Court how "each item" differs from the Fee Schedule's "per item," the term at issue here. Accordingly, the Court finds *McNeil* instructive.

Also pertinent is *Petrey v. Visions Federal Credit Union*. There, the contract provided, in relevant part: "If . . . a debit item is presented without sufficient funds in your checking account to pay it, we may, at our discretion, pay the item (creating overdraft) or return the item for insufficient funds (NSF)." *Petrey v. Visions Fed. Credit Union*, 3:20-CV-1147 (MAD/ML), 2021 WL 2364971, at *3 (N.D.N.Y. June 9, 2021). The contract in *Petrey* did not define "item" or "debit item," nor did it state that the defendant credit union could impose multiple fees on a single transaction. *Id.*, at *4. The arguments put forth in *Petrey* were similar to those advanced in the instant matter. The plaintiff argued that "item" encompasses "both the original submission of an ACH transaction as well as any subsequent resubmissions." *Id.*, at *3. The defendant argued that the contract permitted it to assess multiple fees on an ACH transaction that is submitted by a merchant multiple times, and that it could "assess an NSF fee each time an item is presented." *Id.* (internal quotation marks omitted). The court explained that "what qualifies as an item must be determined before it can be said that the item was presented." *Id.*, at *5. Ultimately, it found that the definition of "item" and the point at which "presentation" occurs were ambiguous, and thus denied dismissal. *Id.*

Defendant contends that *Petrey* is distinguishable. First, Defendant argues that the Membership Agreement "states that each transaction *presented* on the account is a new item." Def.'s Resp. Pl.'s Fourth Notice Suppl. Authority at 2, Dkt. No. 27. Second, it argues that the Fee Schedule's "per item" language means that Defendant can assess a fee "each time [Defendant] returns a check, order or electronic transaction for insufficient funds, regardless of whether it is a second or third presentment of a single transaction." *Id.* The first argument is

7

flawed for at least two reasons. It plainly mischaracterizes the Membership Agreement, which at no point states that "each transaction presented" is a new item, as Defendant argues. Further, it ignores the fact that the *Petrey* defendant advanced the same "presentation" argument. *See Petrey*, 2021 WL 2364971, at *3 ("Defendant argues that the Agreement allows it to assess an NSF fee each time 'an item is presented.'"). The *Petrey* Court deemed the defendant's "focus on the term 'presented'" to be "misguided," advising that "what qualifies as an item must be determined before it can be said that the item was presented." *Id.*, at *4. The same principle applies here. While Defendant's second argument purports to identify the meaning of "per item" in context, the Account Documents do not define the term—again making clear the similarity between this case and *Petrey*. *See id.* ("the agreement here does not define the terms 'debit item' or 'item'"). The Court finds *Petrey* apposite.

In contending that dismissal is appropriate and advocating for its own interpretation of "item," Defendant analogizes to the out of circuit cases *Lambert v. Navy Fed. Credit Union*, 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019), and *Page v. Alliant Credit Union et. al.*, 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020). *See* Mot. at 8-9. The contract in *Lambert* provided, "[a] fee may be assessed . . . for each returned debit item," and, importantly, the parties "agree[d] that an 'item' is a request or invitation for payment." *See Lambert*, 2019 WL 3843064, at *3-5. In contrast, the Membership Agreement does not define "item" and the parties do not offer an agreed upon definition of the term. *See* Compl. ¶ 24. Accordingly, the facts of the instant matter are distinguishable from those of *Lambert*.

The *Page* Court dismissed the plaintiff's breach of contract claim, reasoning that the "language in [the agreement] provisions does not promise members that Alliant will charge just one overdraft fee per transaction." *Page*, 2020 WL 5076690, at *4. Taking note of this

8

reasoning, *Petrey* identified the *Page* ruling as "contrary to well-established contract law" insofar as it "arguably allows [a defendant] to benefit from ambiguity in its own contract." *Petrey*, 2021 WL 2364971, at *4; *see also Kerin v. U.S. Postal Serv.*, 116 F.3d 988 (2d Cir. 1997) ("it is generally accepted that ambiguous contract terms are construed against the drafter"). Further *Page* diverges from in-circuit precedent, discussed above, in which district courts have denied dismissal in similar circumstances. The Court therefore finds *Page* unpersuasive.

Finally, in its Reply, Defendant draws the Court's attention to a case from the Tennessee Court of Appeals, *Saunders v. Y-12 Fed. Credit Union*, No. E2020-00046-COA-R3-CV, 2020 WL 6499558 (Tenn. Ct. App. Nov. 5, 2020). *See* Reply at 5. The contract at issue in *Saunders* defined "overdraft" to encompass any type of transaction posted to an account with insufficient funds, and explicitly stated that a member of the credit union "may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft." *Saunders*, 2020 WL 6499558, at *1. The ambiguity surrounding the word "item" in the present case was absent from *Saunders*, where "each overdraft" was subject to a charge, and *Saunders* is thus distinguishable.

Following the lead of the *McNeil* and *Petrey* Courts, this Court finds the meaning of the term "item" to be ambiguous. The Account Documents do not clearly establish whether, for example, the ACH payment that Plaintiff attempted on May 29, 2019 and the re-processing of that payment on May 31, 2019 qualify as the same item or separate items. Rather, "[b]oth parties have offered reasonable interpretations" of how the Account Documents might apply to this scenario. *See McNeil*, 2020 WL 5802363, at *2 (quoting *Info. Superhighway, Inc. v. Talk Am., Inc.* 274 F. Supp. 2d 466, 471 (S.D.N.Y. 2003)). Accordingly, the Court respectfully recommends that Defendant's Motion to Dismiss Plaintiff's breach of contract claim be denied.[4]

---

[4] As mentioned, Plaintiff argues that the UCC, industry usage, and the NACHA Rules all support her proposed definition of "item." The definition of "item" in the UCC to which Plaintiff cites, *see* Opp.

9

### b. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant seeks to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, arguing that it is duplicative of Plaintiff's breach of contract claim and that Defendant complied with the Membership Agreement. *See* Mot. at 9-10. "Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). Pursuant to the implied covenant, "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006)). Where the contract at issue contemplated the exercise of discretion, the implied covenant "includes a promise not to act arbitrarily or irrationally in exercising that discretion." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (citation omitted). However, a "claim for breach of the covenant of good faith and fair dealing will be duplicative of a breach of contract claim where they are based on the same allegations or where the same conduct is the predicate for both claims." *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743 (ADS)(ETB), 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22, 2012).

---

at 6 (citing N.Y. U.C.C. § 4-104(1)(g) ("any instrument for the payment of money even though it is not negotiable but does not include money")), does not limit an "item" to an instruction by an accountholder. Further, Plaintiff cites no authority in connection with her suggestion that the practices of other banks and credit unions, which may disclose their policies of assessing additional fees on resubmitted transactions, are relevant here. Finally, neither party has submitted a copy of the NACHA Rules. While the NACHA Rules may, as Plaintiff asserts, require that a merchant's repeated request for payment via the ACH network be labeled "RETRY PYMT," *see* Opp. at 12-13, this requirement does not resolve the definition of "item" as it is used in the Account Documents. *See Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-cv-0229-HRH, 2020 WL 1866261, at *4 (D. Alaska Apr. 14, 2020) (declining to consider similar argument based on NACHA Rules at motion to dismiss phase); *see also Roy v. ESL Fed. Credit Union*, 19-CV-6122-FPG, 2020 WL 5849297, at *9 n.3 (W.D.N.Y. Sept. 20, 2020) (discussing *Coleman*). The Court thus declines to adopt Plaintiff's proposed definition of "item," and instead recommends denying dismissal of the contract claim because the term is ambiguous.

Plaintiff's claim for breach of the implied covenant alleges that Defendant's NSF Fee policies and practices were exercised "in bad faith" and were "arbitrary and capricious."  Compl. ¶¶ 64-65.  The Complaint also alleges that it was "totally outside of Plaintiff's reasonable expectations for [Defendant] to use its discretion to assess two or three NSF Fees for a single attempted payment."  *Id.* ¶ 39.  These allegations concern the same underlying conduct, Defendant's alleged practice of assessing multiple NSF Fees on a single attempted payment, as Plaintiff's claim for breach of contract.  The claim for breach of the implied covenant is thus duplicative of the breach of contract claim.  Moreover, where, as here, "one party to a contract advances an interpretation that the other party disagrees with, breach of the express provision of the contract is the appropriate cause of action."  *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) (dismissing claim for breach of the implied covenant).  Thus, because the parties disagree upon the definition of "item," Plaintiff's claim for breach of contract is the appropriate cause of action.

In arguing against dismissal, Plaintiff cites *McNeil*.  There, the court declined to dismiss the plaintiff's claim for breach of the implied covenant and permitted the claim to proceed as an alternative to the plaintiff's breach of contract claim.  *McNeil*, 2020 WL 5802363, at *2.  However, the *McNeil* Court also indicated that the defendant bank failed to show that the implied covenant claim should be dismissed as duplicative of the contract claim.  *Id.*  Here, Defendant persuasively argues that the claims are duplicative, as they both arise from Defendant's assessment of NSF Fees on resubmitted transactions.  *See* Mot. at 9-10; Reply at 10-11.  Plaintiff also cites to *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*.  The court there did not consider whether the implied covenant claim ought to be dismissed as duplicative of a

11

contract claim. *See In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 44 (E.D.N.Y. 2014).

Because it is duplicative of Plaintiff's claim for breach of contract, the Court respectfully recommends that Plaintiff's claim for breach of the implied covenant of good faith be dismissed. *See Petrey*, 2021 WL 2364971, at *5 (dismissing as duplicative claim that defendant credit union breached implied covenant "through its NSF fee policies and practices," and noting "[t]his is the same conduct underlying [plaintiff's] breach of contract cause of action and it is not transformed into a viable claim simply because Plaintiff dresses it up as 'bad faith'"); *Chambers v. HSBC Bank USA, N.A.*, 19 Civ. 10436 (ER), 2020 WL 7261155, at *5 (S.D.N.Y. Dec. 10, 2020) (dismissing as duplicative claim for breach of implied covenant where, like claim for breach of contract, it arose from allegation that defendant bank "inappropriately assessed NSF fees on payments resubmitted for processing").[5]

### c. Unjust Enrichment

Defendant seeks dismissal of Plaintiff's unjust enrichment claim on the grounds that there exists between the parties a valid, enforceable contract. *See* Mot. at 10-11. The existence of an enforceable written contract precludes recovery for unjust enrichment. *Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 201 (E.D.N.Y. 2007); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter").

---

[5] The Court rejects Defendant's second argument for dismissal, which contends that it complied with the Membership Agreement. As discussed above, Defendant's compliance with the Account Documents cannot be determined at this phase of the litigation, given the ambiguity of a key term in the contract, "item." Nonetheless, dismissal of Plaintiff's cause of action for breach of the implied covenant is warranted on grounds that it is duplicative of the contract claim.

Plaintiff does not dispute the existence of a valid, enforceable contract between the parties. Rather, Plaintiff contends that "determining whether . . . the Agreement governs the subject matter animating the parties' dispute cannot be undertaken at this early stage of the proceedings." Opp. at 24. The Court disagrees. The Account Documents clearly permit Defendant to assess a NSF Fee or OD Fee if an item is presented and the member's account lacks sufficient funds to pay that item; the dispute instead concerns the definition of "item." Further, though Plaintiff briefly suggests the Court cannot determine whether the subject matter is covered, she does not actually argue that the Account Documents do not govern the subject matter of this action. This case is thus distinct from *St. John's University, New York v. Bolton*, to which Plaintiff cites. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183-85 (E.D.N.Y. 2010) (denying dismissal of unjust enrichment claim, where defendants "dispute the scope and enforceability" of terms of governing agreement and defendants' "arguments beg the question of what performance the Agreements required of" them). Accordingly, the Court respectfully recommends that Plaintiff's claim for unjust enrichment be dismissed. *See McNeil*, 2020 WL 5802363, at *3 (dismissing unjust enrichment claim where parties did not dispute validity and enforceability of contract allowing defendant bank to assess overdraft or non-sufficient funds fees); *see also Chambers*, 2020 WL 7261155, at *6 (explaining that where parties have a contract, claim for unjust enrichment may proceed "*only* . . . if there is a question as to whether the contract is valid," and dismissing unjust enrichment claim against defendant bank) (emphasis added).

    d. **GBL § 349**

Defendant moves to dismiss Plaintiff's claim alleged under GBL § 349, contending that its conduct was not materially misleading and that Plaintiff's GBL claim is duplicative of her

13

claim for breach. *See* Mot. at 11-12; Reply at 12. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

In connection with her claim under GBL § 349, Plaintiff alleges that Defendant "represent[ed] and advertis[ed] that it would only assess a single $30 NSF Fee for a single item" and that Defendant "omitted, suppressed, and concealed" the fact that it would charge multiple fees. Compl. ¶ 80. Plaintiff further asserts that, had she known she could be charged multiple NSF Fees, "she would have made different payment decisions so as to avoid incurring such fees or moved her funds to a different Credit Union." *Id.* ¶ 84. These allegations are separate from those which underlie Plaintiff's breach of contract claim. *See McNeil*, 2020 WL 5802363, at *2 (allegation that defendant bank "defin[ed] the key term 'item' in an unexpected and misleading way" is distinct from claim that defendant breached contract by assessing multiple fees). The instant matter is therefore different from those cases to which Defendant cites in support of its argument. *See Chambers*, 2020 WL 7261155, at *5-6 (noting plaintiff did not allege misleading act or practice separate and apart from breach); *Perks*, 444 F. Supp.3d 635, 641-42 (same); *Costoso v. Bank of America, N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015) ("conduct of which [plaintiff] complains is essentially that the Defendant failed to satisfy its contractual duties, not that it concealed or misrepresented any contractual terms").

The Court next considers Defendant's argument that its conduct was not materially misleading. Defendant avers that, "[b]ecause [its] assessment of NSF [F]ees complied with the terms of the Membership Agreement, there is no 'materially misleading' conduct." Mot. at 12; Reply at 13 ("because the Membership Agreement expressly authorizes [Defendant] to assess an

NSF [F]ee whenever a merchant presents an item or transaction, the assessment of such fees cannot be unfair or deceptive"). This argument presupposes that the Account Documents unambiguously permit Defendant to assess additional fees on a re-submitted transaction. However, as the Court's assessment of Plaintiff's contract claim suggests, the uncertain meaning of "item" undermines such an argument; at this phase, it is unclear whether the Account Documents permitted Defendant to assess multiple fees and thus whether Defendant complied with the parties' agreement. Even if this were not so, the question of whether Defendant's conduct is misleading is "better suited for the fact-finder in this case." *McNeil*, 2020 WL 5802363, at *2 (quoting *Segovia v. Vitamin Shoppe, Inc.*, 14-CV-7061 (NSR), 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017)).[6]

For these reasons, the Court respectfully recommends that Defendant's Motion to Dismiss Plaintiff's GBL § 349 claim be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's Motion be GRANTED IN PART and DENIED IN PART.

---

[6] In putting forth the argument that its fee assessments comply with the Membership Agreement, Defendant cites *Mendez v. Bank of America Home Loans Servicing, LP*. *See* Mot. at 12; Reply at 12. There the court found unavailing the claim that fees charged to the plaintiff "were deceptive and misleading because they are in violation of the Plaintiff's mortgage contract with the Defendant." *Mendez v. Bank of America Home Loans Serv., LP*, 840 F. Supp. 2d 639, 659 (E.D.N.Y. 2012). Separately, the court dismissed the plaintiff's claim for breach of the mortgage contract. *Id.* at 657. In rejecting the plaintiff's GBL § 349 argument, the court noted that the mortgage contract at issue "contained no express limitation on the appropriate amount of default related servicing fees" and accounted for an explicit warning in the contract: "[w]ith regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee." *Id.* at 659. Here, as discussed, the Court has not dismissed Plaintiff's claim for breach of contract and has instead determined that a key term in the Account Documents, "item," is ambiguous. Nor has Defendant indicated that the Account Documents include a warning like that of the mortgage contract in *Mendez*, which might permit it to charge fees not otherwise indicated by the agreement. Moreover, Plaintiff's GBL § 349 claim is not grounded in Defendant's alleged breach but in fee policies that Defendant allegedly omitted, suppressed, or concealed from Plaintiff. Accordingly, *Mendez* is inapposite.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                  /s/
                                      Steven L. Tiscione
                                      United States Magistrate Judge
                                      Eastern District of New York

Dated: Central Islip, New York
         August 24, 2021